IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 27, 2011 Session

**SYBIL LEO**
v.
**ROBERT GEORGE GARDNER, II**
v.
**EDDIE PORTER AND CARMEN PORTER**

**An Appeal from the Circuit Court for Davidson County**
**No. 09D-639      Carol Soloman, Judge**

**No. M2010-02616-COA-R3-CV - Filed: February 10, 2012**

This appeal involves a divorce action that includes a claim against third parties. The wife filed a divorce complaint against the husband, and the husband counterclaimed for divorce. Later, the husband amended his divorce counterclaim to add claims against third parties as defendants, alleging that they took personal property from the marital home with the wife's acquiescence. Later, the divorce claims were dismissed, but the claims against the third parties remained. After a hearing, the trial court awarded the husband compensatory and punitive damages as to the property taken. As to one item, however, the third parties were ordered to deliver the item to the court to be donated to a local charity. The third parties now appeal. We affirm the trial court's finding as to the value of the property taken, remand for findings of fact and conclusions of law under Rule 52.01 as to the monetary judgment, and vacate the order requiring the donation of an item of property.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is
Affirmed in Part, Vacated in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Jonathan L. Miley, Nashville, Tennessee, for the Appellants, Eddie Porter and Carmen Porter[1]

Lewis A Williams, Nashville, Tennessee, for the Appellee Robert George Gardner, II

## MEMORANDUM OPINION[2]

On March 4, 2009, Plaintiff Sybil Leo ("Wife") filed a complaint for divorce against her husband, Defendant/Appellee Robert George Gardner, II ("Husband").[3] On May 19, 2009, Husband filed a counterclaim for divorce.

On February 5, 2010, Husband filed a motion to amend his counterclaim to add Appellant Nicoletta Carmen Porter, Husband's ex-wife, and her husband at the time, Eddie Porter (collectively, "the Porters"), as defendants.[4] Husband alleged that, after he and Wife separated, the Porters came to the marital home while Wife was at home and left with several items of personal property from the home that were subject to equitable division in the divorce matter. A few days later, Wife voluntarily dismissed her divorce petition.

On February 12, 2010, the trial court conducted a hearing on Husband's motion to add the Porters as defendants to his counterclaim.[5] An order granting the motion was entered on February 22, 2010.

On March 10, 2010, Husband amended his pleadings to describe in more detail the personal property allegedly taken by the Porters. Husband asserted that the Porters took, among other things, "approximately twenty (20) Hummell [sic] Figurines, a PlayStation video-game and

---

[1]Mr. Miley did not represent the Appellants in the trial court.

[2]Rule 10 of the Rules of the Court of Appeals of Tennessee states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[3]On July 24, 2009, Wife amended her complaint to include additional grounds for divorce.

[4]Although the parties and the trial court at times referred to the Porters as "third-party defendants," they are not actually "third-party defendants" impleaded pursuant to Rule 14.01 of the Tennessee Rules of Civil Procedure, but simply defendants.

[5]A transcript of that hearing was not included in the appellate record.

accessories, [and] multiple PlayStation games." In their answer, the Porters claimed that the Hummel figurines and the PlayStation unit, games, and accessories "were given to the both of the Porters as reimbursement from [Wife] in April of 2009, while at the home of [Wife and Husband]."

On April 7, 2010, Husband filed a notice of voluntary nonsuit as to his counterclaim for divorce. The trial court entered an order dismissing Husband's divorce claim and clarifying that the dismissal of the divorce claim against Wife did not affect the remaining claim against the Porters.

On October 26, 2010, the trial court conducted a hearing on Husband's claim against the Porters. The record does not include a transcript of the hearing; instead we have a Statement of the Evidence approved by the trial court pursuant to Rule 24(c) of the Tennessee Rules of Appellate Procedure.[6] According to the Statement of the Evidence, Husband, Wife, and the Porters testified at the hearing.

Husband testified that, after he and Wife separated, Wife continued to live in the marital home. In April 2009, while the parties were separated, Wife called Husband and said that the Porters had come to the marital home and had taken several things, including the Hummel figurines and the PlayStation items. Husband said that he owned twenty-two Hummel figurines, kept on display in the living room of the marital home, and that the Porters took eighteen of them. Husband said that six figurines were returned to him at the hearing, leaving twelve still with the Porters. Husband asserted that he also owned the PlayStation equipment and games taken from the home by the Porters, and that these were not returned.[7]

Husband testified about the value of the Hummel figurines. He described himself as a life-long collector of the figurines and said that collecting them was a tradition in his family. He said that they were produced at only one factory in Germany, beginning in the early 1930s, based on concepts taken from paintings by a nun. Some of the Hummel figurines were given to Husband by his great-grandmother and great-aunts, who escaped from Germany during the Holocaust and fled to America.

Husband estimated that the twelve figurines that remained in the Porters' possession had an approximate monetary value of $4,221.40. He arrived at this figure by using the value

---

[6]Initially, the Porters filed a proposed statement of the evidence. Husband objected and submitted his own proposed statement of the evidence. The trial court approved the statement of the evidence filed by Husband. We note that the statement of the evidence that was approved by the trial court is "the official record of the proceedings in the trial court for purposes of appeal." *Ledford v. Ledford*, No. 01A01-9701-CH-00029, 1998 WL 736664, at *2 (Tenn. Ct. App. Oct. 23, 1998).

[7]Husband also testified that the Porters took a Tiffany lamp, but the lamp is not at issue on appeal.

estimates in an old Hummel collectors' guidebook, coupled with the knowledge he had acquired from his great-grandparents and other family members, and through reading and talking with other Hummel collectors. Husband testified that the figurines taken by the Porters would be worth considerably more today on the open market than the $4,221.40 listed in the old Hummel collectors' guidebook. He said that the sentimental and personal value of the figurines to him made them irreplaceable, as they were the only items he had remaining from his great-grandmother's family; he claimed he would not sell the figurines for three times his estimated value.

Wife also testified at trial. She said that, on the day in question in April 2009, Mrs. Porter "showed up uninvited" at the marital home; Wife did not know why, but nevertheless allowed her into the home. After Mrs. Porter had been there about an hour, Mr. Porter arrived, and Wife allowed him in as well. Wife explained that, during this visit, Mrs. Porter told her that the Hummel figurines belonged to her, and that the PlayStation items were purchased with money stolen from the Porters by Mrs. Porter's children,[8] at Husband's behest. Wife said that Mrs. Porter took all of the Hummel figurines and told Wife that she would return them to Husband if he gave her $3,000, the amount she believed the children stole from her. Wife stated that she did not stop the Porters from leaving with the Hummel figurines and the PlayStation items because she was upset and confused. Afterward, Wife stated, she felt badly about the Hummel figurines. She left messages with Mrs. Porter, offering to pay her $3,000 if she would return them; this offer was refused. Likewise, demands by Wife's attorney that the Porters return the items were rebuffed.

The Porters told a different story. Mrs. Porter testified that, on that day in April 2009, Wife called her "out of the blue" and wanted to talk to her about her divorce from Husband, so Mrs. Porter went to the home. She said that Mr. Porter arrived about ten minutes later.

Similar to Wife's testimony, Mrs. Porter said that she believed that Husband had talked the children into stealing money from her and Mr. Porter, and that she and Mr. Porter discussed this with Wife. Mrs. Porter stated that Wife gave them a black satchel containing the PlayStation, a white bag containing the PlayStation games, and another bag containing the Hummel figurines. Mrs. Porter claimed that she did not realize that they had been given the figurines until she and Mr. Porter returned home.

Finally, Mr. Porter testified. He stated that he went to Wife's house in April 2009 because Wife had asked Mrs. Porter to visit, and Mrs. Porter asked him to meet her there. He said that the three of them discussed Wife's marriage to Husband. Mr. Porter claimed that, during the visit, Wife handed him a black bag containing the PlayStation equipment, and a red bag

---

[8]The children who allegedly stole from the Porters were those born to Mrs. Porter and Husband during their relationship.

containing the Hummel figurines, telling the Porters that the items would not repay the money that was allegedly stolen by the children, but that "the Hummel figurines were a start."

On November 8, 2010, the trial court entered an order finding in favor of Husband against the Porters. The trial court found that the Porters were in possession of the twelve remaining Hummel figurines, and it valued them at $4,221.40. The trial court ordered the Porters to deliver the figurines to Husband within twenty-four hours of the date of the order. The order stated that, if the Porters failed to deliver the figurines within the prescribed time, the Porters would "be responsible for repaying to [Husband], three (3) times the value of said Hummell [sic] Figurines, for a total judgment of Twelve Thousand Six Hundred Sixty-Four dollars and Twenty cents ($12,664.20)." The trial court also determined that the Porters were in possession of the PlayStation equipment and games, and it ordered that the PlayStation items be "submitted to the Court to be provided to Morningstar Domestic Violence Shelter." Each party was held responsible for his or her own attorney fees, and costs were assessed to Husband. Because the Porters did not deliver the Hummel figurines to Husband within the stated time limitation, the trial court subsequently entered an order requiring the Porters to pay Husband $12,664.20 in damages.[9] The Porters now appeal the trial court's decision.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Porters raise the following issues:

> (1) Whether the trial court erred in finding that the Porters were in possession of twelve (12) Hummel figurines valued at $4,221.40?
> (2) Whether the trial court erred in ordering the Porters to pay Husband a punitive amount of $12,664.20, or three times the value of the Hummel figurines, if they were not returned to Husband twenty-four (24) hours after the date of the hearing?
>
> (3) Whether the trial court erred in ordering that the PlayStation equipment and games be turned over to the trial court to be donated to Morningstar Domestic Violence Shelter?

---

[9]The Porters filed a notice of appeal from the trial court's November 8, 2010 order. This Court, however, issued an order requiring the Porters to show cause why the case should not be dismissed for lack of a final order. Subsequently, on November 21, 2011, the trial court entered a final order in the matter, finding that the Porters had not, in fact, delivered the Hummel figurines to Husband, and entering a judgment against them for $12,660.20. The order on appeal is now a final order so as to confer appellate jurisdiction on this Court. *See Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990).

(4) Whether the Porters should be awarded their attorney fees incurred both at trial and on appeal?

Because this was a bench trial, we review the trial court's findings of fact *de novo* on the record, presuming those findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *see Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citation omitted). When the trial court's factual findings are based on its assessment of witness credibility, we will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Questions of law are reviewed *de novo*, with no such presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

## ANALYSIS

The Porters first argue that the evidence preponderates against the trial court's determination that they were in possession of twelve Hummel figurines belonging to Husband that were valued at $4,221.40, based on their assertion that Husband's testimony was not credible. The Porters point out that Husband had averred in his complaint that he had twenty Hummel figurines, then later testified that he had twenty-two figurines and that the Porters took eighteen of them. The Porters argue that this discrepancy shows that Husband is "clearly lying and is simply making up numbers of figurines." They also point out that, although Husband testified that the twelve figurines he owned were worth approximately $4,221.40, he did not provide documentation, proof of purchase, photographs, or other evidence to substantiate his claims that he actually owned the figurines or that their value was equal to almost $350 per figurine. The Porters also claim that Husband's "credibility should have been seriously questioned" in view of the trial court's previous finding that Husband had stolen over $6,000 from Wife. For these reasons, the Porters argue, the evidence preponderates against the trial court's factual determination that they had twelve of Husband's figurines worth $4,221.40.

As we have stated, when a trial court's findings of fact are based on witness credibility, those findings will not be overturned absent clear and convincing proof to the contrary. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.* at 653.

Here, although Husband's testimony shifted about how many Hummel figurines he owned, the Porters were free to point out such discrepancies to the trial court to factor into its evaluation of Husband's credibility. However, Husband's testimony clearly establishes his belief that twelve Hummel figurines were taken by the Porters, and that the value of the

figurines was at least $4,221.40 based on his collector's handbook and his personal knowledge about the value of his property. We note that the Porters did not deny taking numerous Hummel figurines from the marital home; rather, they now dispute the number taken. Moreover, they offered no countervailing evidence as to the figurines' value. Based on the record before this Court, we do not find clear and convincing evidence to suggest that the trial court erred in crediting Husband's testimony on these matters. Therefore, we affirm the trial court's finding that the Porters were in possession of twelve Hummel figurines belonging to Husband, and that the figurines were worth $4,221.40.

The Porters next argue that the trial court erred in ordering them to pay Husband $12,664.20 in damages, three times the cumulative value of the Hummel figurines. They assert that this damage award was punitive in nature. The Porters note that punitive damages are appropriate only in the most egregious cases and must be supported by clear and convincing evidence that the defendant acted intentionally, fraudulently, maliciously, or recklessly. *Hodges v. S.C. Toof*, 833 S.W.2d 896, 901 (Tenn. 1992). They assert that the record does not contain clear and convincing evidence to support a finding that the Porters acted with the requisite intent, so the trial court's damage award must be reversed.

The Porters correctly identify the standard for awarding punitive damages as set out in *Hodges v. S.C. Toof*, that punitive damages may be awarded only if clear and convincing evidence supports a finding of intentional, fraudulent, malicious, or reckless conduct. As we have indicated, clear and convincing evidence leaves "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Id.* at 901 n.3.

We agree with the Porters that the trial court's award of three times the value of the Hummel figurines was punitive in nature. The trial court did not, however, make any factual findings that would support an award of punitive damages in this case. In fact, the trial court's order is devoid of any specific findings resolving the conflicts in the parties' testimony on this point.

Rule 52.01 of the Tennessee Rules of Civil Procedure, as amended in 2009, mandates that, after a bench trial, the trial court "*shall* find the facts specially and *shall* state separately its conclusions of law . . . ." Tenn. R. Civ. P. 52.01 (emphasis added). Thus, under Rule 52.01, even if no request for such findings of fact and conclusions of law is made, the trial court is nevertheless obligated to issue them. Here, the trial court did neither, and instead simply awarded a judgment of $12,664.20 without stating the factual findings or legal conclusions supporting such a judgment.

In view of the starkly contrasting testimony on the Porters' intent in taking the figurines, and the absence of findings of fact and conclusions of law supporting the award of $12,664.20, we are unable to perform a meaningful review on appeal. Therefore, we must remand the

case to the trial court with instructions to make specific findings of fact and conclusions of law, as per Rule 52.01 of the Tennessee Rules of Civil Procedure.

The Porters also challenge the trial court's decision insofar as it required them to turn over the PlayStation equipment and games to the trial court to be donated to a domestic violence shelter. They argue that "[s]uch action by the trial judge goes beyond what is acceptable under the discretionary function of the court."

Husband takes no position on this issue in this appeal.[10] Although Husband claimed that the Porters wrongfully took the PlayStation items from the marital home, on appeal he does not claim an ownership interest in the property.

We find no authority for the trial court to order the Porters to give the PlayStation items to an entity that is a stranger to this litigation. For this reason, we vacate the trial court's decision as it relates to the PlayStation items.

The Porters argue that they are entitled to attorney fees for those fees incurred in the trial court and in this Court. Husband also argues that he is entitled to attorney fees incurred in this appeal, because the appeal was frivolous and without merit. Respectfully, we exercise our sound discretion and hold that all parties are responsible for their own attorney fees.

---

[10]Husband claims that, although he raised the question of ownership of this equipment in his complaint, he merely requested that the Porters show cause why the property should not be returned. Because the PlayStation equipment and games belonged to a child who was not a party to the case, Husband states, he does not assert an ownership interest in the property and has no stake in the resolution of this issue on appeal.

**CONCLUSION**

The decision of the trial court is affirmed in part, vacated in part, and remanded for further proceedings consistent with this Opinion. Costs on appeal are to be taxed equally to Appellants Eddie and Carmen Porter and their surety, and to Appellee Robert George Gardner, II, for which execution may issue, if necessary.


_____

HOLLY M. KIRBY, JUDGE


_____